# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARCH INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-538-WKW-DAB** |
| | ) | |
| **ACE INSURANCE COMPANY,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Arch Insurance Company ("Arch"), sues Defendants, Ace Insurance Company ("Ace"), Tyson Foods, Inc. ("Tyson"), Ricky Walker ("Walker"), Mike Griffino ("Griffino"), and Dothan Security, Inc. ("DSI"), in a five-count Complaint for declaratory relief, subrogation, indemnity, and unjust enrichment, arising out of an underlying wrongful death lawsuit filed in state court.  (Doc. 1).

Before the court are the following motions and responses: **Tyson's Motion to Dismiss, or in the Alternative, Motion to Stay** (Doc. 11), Tyson's Memorandum Brief in Support of Motion to Dismiss (Doc. 12), Plaintiff Arch's Response in Opposition to Tyson's Motion to Dismiss (Doc. 21), Notice of Filing Corrected Exhibit 7 to Tyson's Brief in Support of Motion to Dismiss (Doc. 23), Tyson's Reply to Arch's Opposition to Tyson's Motion to Dismiss (Doc. 24), **Ricky Walker's Motion to Dismiss, or in the Alternative, Motion to Stay** (Doc. 20), Plaintiff's Response in Opposition to Ricky Walker's Motion to Dismiss, or in the Alternative, Motion to Stay (Doc. 26), Ricky Walker's Reply to Arch's Opposition to Motion to Dismiss (Doc. 32), **Tyson's Motion to Realign the Parties and to Dismiss for Lack of Diversity Jurisdiction** (Doc. 27), Dothan Security, Inc.'s Opposition to Tyson's Motion to Realign the Parties and Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings (Doc. 38), Plaintiff's Response in Opposition to Motion to Realign Parties and to Dismiss for Lack of Diversity Jurisdiction (Doc. 39), Tyson's Reply in Support of Realignment and Dismissal for Lack of Diversity

Jurisdiction (Doc. 41), **Mike Griffino's Motion to Dismiss, or in the Alternative, Motion to Stay** (Doc.

40), and Arch's Response in Opposition to Mike Griffino's Motion to Dismiss, or in the Alternative,

Motion to Stay (Doc. 48).[1]  The court heard argument on the motions on February 28, 2017.  For the reasons

discussed below, the court recommends this action be stayed under the doctrines of abstention pursuant to

*Brillhart v. Excess Insurance Company*, 316 U.S. 491, 494 (1942), *Wilton v. Seven Falls Company*, 515

U.S. 277, 286–87 (1995), *Ameritas Variable Life Insurance Company v. Roach*, 411 F.3d 1328, 1330 (11th

Cir. 2005), and *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

## I.      JURISDICTION

Arch invokes this court's subject matter jurisdiction under 28 U.S.C. § 2201 (the Declaratory

Judgment Act) and 28 U.S.C. § 1332 (diversity of citizenship).  Defendants challenge venue.  (Docs. 11,

20, 40). Defendant Griffino challenges personal jurisdiction.  (Doc. 40).[2]  On January 5, 2017, this matter

was referred to the undersigned by Chief U.S. District Judge W. Keith Watkins for disposition or

recommendation on all pretrial matters.  (Doc. 46).  *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.;

*United States v. Raddatz*, 447 U.S. 667 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d

507 (11th Cir. 1990).

## II.     STANDARD OF REVIEW

---

[1] Also before the court is **Tyson's Motion for Extension of Time to Respond to Arch's Motion for Leave to Amend Complaint** (Doc. 42), and Arch's response in opposition (Doc. 43).  Tyson timely filed its response to the motion, *see* (Doc. 45), and thus Tyson's motion for extension of time (Doc. 42) is due to be denied as **moot**.  Arch has also filed a **Motion for Leave to Amend Complaint** (Doc. 36), which Tyson, Griffino, and Walker oppose (Doc. 45).  DSI does not oppose the motion.  (Doc. 34).  According to Arch's motion, the purpose of the amendment is to name as Defendants the proper Ace entities.  (Doc. 36 at 1–2).  Specifically, Arch seeks to amend to name ACE USA, Inc. and ACE American Insurance Company, instead of ACE Insurance Company.  *Id.*  Because the undersigned recommends a stay based on abstention, the motion for leave to amend complaint (Doc. 36) is due to be **denied without prejudice**.  The court notes that the fact that the proper Ace entities are not named in this lawsuit neutralizes Plaintiff's argument the underlying proceedings are not parallel because Ace is not currently a party in the state court case.

[2] Griffino's personal jurisdiction argument appears to be more of a venue argument rather than a jurisdictional one.  Because the undersigned recommends a stay based on abstention, the motions directed to venue are due to be denied without prejudice to be raised later by the parties in the event not all issues are resolved in the underlying state court coverage lawsuit.

A.      *Motion to Dismiss*

Federal Rule of Civil Procedure 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleader must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

In considering a motion under Rule 12(b)(6), courts have adopted the "incorporation by reference" doctrine, which provides "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citations omitted). In this context "undisputed" means that the authenticity of the document is not challenged. *See id.*

B.      *Declaratory Judgment Act*

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration,' 28 U.S.C. § 2201(a) (1988 ed., Supp. V) (emphasis added). …The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Wilton*, 515 U.S. at 286–87. The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). As the Eleventh Circuit observed, the Act "only gives the federal

courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas*, 411 F.3d at 1330. "The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000).

## III.   BACKGROUND AND PROCEDURE

### A.   *Underlying Action*

Reba Kirkley, as administratrix of the Estate of Allen Hayes ("Mr. Hayes"), filed a wrongful death lawsuit ("Underlying Action") on June 26, 2008, against Tyson, Walker, and Griffino (collectively "the Tyson Defendants") in the Circuit Court of Blount County, Alabama.[3]   (Doc. 1, ¶ 17; Doc. 1-1).  Mr. Hayes's widow, Mildred Hayes later joined the lawsuit as an additional plaintiff.  (Doc. 1, ¶ 17; Doc. 1-1 at 8).

As alleged in the amended complaint, Mr. Hayes was struck and killed on April 15, 2008, by a tractor[4] owned by Tyson and driven by Tyson employee Gary Crenshaw at Tyson's plant (the "Underlying Incident").  (Doc. 1, ¶ 18; Doc. 1-1 at 9).  At the time of the Underlying Incident, Mr. Hayes was a DSI employee working as a security guard at Tyson's plant.  (Doc. 1, ¶ 18; Doc. 1-4 at 4).  Defendant Griffino was Tyson's Plant Manager/Safety Director and Defendant Walker was Tyson's Complex Manager.  (Doc. 1, ¶ 20; Doc. 1-1 at 1–2).  The amended complaint asserted the following claims against the Tyson Defendants: (1) wrongful death; (2) negligence and/or wantonness; (3) negligent and/or wanton hiring, training, retention, and supervision; and (4) combined and concurring negligence and/or wantonness.  (Doc. 1-1 at 9–12).  DSI was not named as a Defendant in the Underlying Action.  *See* (Doc. 1, ¶ 19).

### B.   *State Court Coverage Lawsuit*

---

[3] Blount County is in the southern division of the United States District Court for the Northern District of Alabama.

[4] Arch pleads the tractor was a commercial tractor that falls within the policy's definition of "Auto" and the Arch policy excludes coverage for bodily injury arising out of the use of an auto owned or operated by an insured.  (Doc. 1, ¶¶ 38–39).  Tyson responds that Arch's argument in the underlying State Court Coverage Lawsuit that the Tyson tractor, referred to as a "yard dog," was an excluded auto was already litigated and rejected by that court.  (Doc. 24 at 1, 4–5).

Prior to the Underlying Incident, DSI entered into a Master Security Service Agreement (MSSA) with Tyson to provide security services as an independent contractor at Tyson plants in Alabama. (Doc. 1-4, ¶ 6). The MSSA contained an indemnity provision and an obligation to maintain insurance coverage. *Id.* ¶¶ 7–8. Arch issued a CGL policy to DSI which was in effect on the date of the Underlying Incident. *Id.* ¶¶ 21–22. In April 2009, the Tyson Defendants issued a demand upon Arch and DSI for a defense and indemnity in the Underlying Action. Arch denied on the grounds that no coverage existed under the Arch Policy. (Doc. 1, ¶ 21).

On April 15, 2014, the Tyson Defendants sued Arch and its insured, DSI, in the Circuit Court of Cullman County[5] ("State Court Coverage Lawsuit"), for Arch and DSI's refusal to defend and indemnify the Tyson Defendants in the Underlying Action. (Doc. 1, ¶ 25; Doc. 1-4). This State Court Coverage Lawsuit was subsequently transferred to the Circuit Court of Blount County and is still pending. (Doc. 1, ¶ 25). The issues raised in the State Court Coverage Lawsuit include whether:

(1)    Arch and DSI breached their contractual obligations under the Arch Policy and MSSA, respectively, to defend and indemnify the Tyson Defendants for claims arising in connection with the Underlying Action;

(2)    Tyson, Griffino, and Walker were "additional insureds" under the policy issued by Arch to DSI; and

(3)    Arch is guilty of bad faith in failing to provide a defense, indemnity, and coverage under the Arch Policy.

(Doc. 1-4, ¶¶ 30-51; Doc. 12 at 2). The Underlying Action was pending at the time the State Court Coverage Lawsuit was filed. (Doc. 1, ¶ 26).

On January 9, 2015, the Blount County Circuit Court entered a "Declaratory Judgment" in the State Court Coverage Lawsuit, concluding that Arch owed a duty to defend the Tyson Defendants in the Underlying Action until the date that the claims against the Tyson Defendants become subject to a final judgment in the Underlying Action. (Doc. 12-1 at 2–3). The Blount County court found "no basis in law or fact to support Arch's failure to provide a defense to" the Tyson Defendants. *Id.* Thereafter, "Arch

---

[5] Cullman County is also located in the Northern District of Alabama.

settled in full the Underlying Action on the Tyson Defendants' behalf" for one million dollars.  (Doc. 1, ¶ 45; Doc. 1-7).  Pursuant to Arch's settlement of the Underlying Action, that case was dismissed with prejudice as to all claims asserted against the Tyson Defendants.  (Doc. 1, ¶ 45; Doc. 1-8).  Issues of indemnification and bad faith remain pending in the State Court Coverage Lawsuit.

On February 10, 2017, the Blount County court entered an order certifying final judgment in the State Court Coverage Lawsuit.  (Doc. 49-1).  That court entered the order after being advised of the instant lawsuit and sought to clarify that its January 9, 2015, declaratory judgment was a final order.  *Id.* at 3.  The court further noted, "[a]ll other claims in this action shall remain pending and will not be stayed should any party appeal [the] Court's final January 9, 2015 declaratory judgment."  *Id.*  Arch has appealed the February 10, 2017 judgment to the Alabama Supreme Court.  (Doc. 50 at 6–9).

C.      *Policies of Insurance*

1.      Arch Policy to DSI

Arch issued a commercial general liability (CGL) insurance policy to DSI, Policy No. BSPKG0157000, for the policy period beginning September 1, 2007, and ending September 1, 2008 ("Arch Policy").  (Doc. 1, ¶ 27; Doc. 1-3 at 1).  Arch claims that the Tyson Defendants are not additional insureds under this policy, the policy affords no coverage to the Tyson Defendants, exclusions apply which preclude coverage for the Underlying Incident, and the policy does not obligate Arch to defend or indemnify the Tyson Defendants in the Underlying Action.  (Doc. 1, ¶¶ 29–43).

2.      Ace Policy to Tyson

Arch further alleges in the complaint that Ace issued a CGL policy ("Ace Policy") to Tyson which was in effect at the time of Mr. Hayes's death "and under which coverage is owed on behalf of the Tyson Defendants in connection with the Underlying Action."  (Doc. 1, ¶ 22).  Arch states that Ace "owed and owes a duty to defend and indemnify the Tyson Defendants in connection with the Underlying Action" and that "the Ace Policy was primary to the Arch Policy."  (Doc. 1, ¶¶ 23-24).  Arch alleges that:

> Under the terms of the Arch Policy, Arch is entitled to reimbursement of the $1 million
> Arch paid in settlement funds on behalf of the Tyson Defendants since, upon information

6

and belief, ACE is obligated to pay the first $1 million of coverage for the Tyson Defendants' liability arising from the Underlying Incident."

(Doc. 1, ¶ 24).

## IV.    PLAINTIFF'S CLAIMS

All of Arch's claims arise out of the interpretation of the respective insurance policies and the resulting determination as to which party is responsible for payment of the one million dollar settlement of the Underlying Action.  In Count I of its Complaint, Arch requests declaratory relief against Ace, claiming that:

> Should it be determined that the Tyson Defendants are covered as Additional Insureds under the Arch Policy, then upon information and belief, Arch is entitled to reimbursement of the $1 million from ACE pursuant to the terms of the Arch Policy since, upon information and belief, (i) ACE had a duty to defend and indemnify the Tyson Defendants in connection with the Underlying Action pursuant to the terms of the ACE Policy; and (ii) the ACE policy was and is primary to the Arch Policy and as such, under the terms of the Arch Policy, Arch is entitled to reimbursement of the $1 million paid in settlement funds on behalf of the Tyson Defendants under the terms of the Arch Policy.

(Doc. 1, ¶ 48).  Arch claims in Count II that it is entitled to contractual subrogation and/or reimbursement from Ace for the one million dollars it paid on behalf of the Tyson Defendants to settle the Underlying Action because "the ACE policy was and is primary to the Arch policy."  (Doc. 1, ¶ 50).

Arch seeks declaratory relief against the Tyson Defendants in Count III, asserting that "no coverage exists under the Arch Policy for the Tyson Defendants' liability in the Underlying Action, and therefore the Tyson Defendants are obligated to reimburse Arch for the funds Arch paid on the Tyson Defendants' behalf to settle the Underlying Action."  (Doc. 1, ¶ 54).  In Count IV, Arch claims "common law indemnity" against the Tyson Defendants and seeks to hold them "liable as the actively negligent and/or wanton defendants in regard to Mr. Hayes' death and the Underlying Action arising from such."  (Doc. 1, ¶ 56).  Lastly, in Count V, Arch asserts a claim of unjust enrichment against Ace and the Tyson Defendants in that a benefit was conferred upon them by Arch "paying $1 million to settle the Underlying Action on behalf of the Tyson Defendants when there was no coverage whatsoever under the Arch Policy and the

7

Underlying Action arose from alleged negligent and/or wanton acts of the Tyson Defendants." (Doc. 1, ¶ 59).

## V.      DEFENDANTS' MOTIONS

### A.      *Motions to Dismiss/Motions to Stay (Docs. 11, 20, 40)*

Tyson seeks dismissal of Arch's complaint on several grounds. (Docs. 11, 12). As a preliminary matter, Tyson asserts dismissal is warranted because Alabama's "voluntary payment" doctrine precludes Arch's claims and Arch has no right of reimbursement under Alabama law. (Doc. 12 at 3). Next Tyson urges Arch waived, in an endorsement to the Arch policy, any right to recovery for injury arising out of work DSI performed. *Id.*

As for the claims against Ace, Tyson asserts they are baseless because the Ace policy is an excess CGL policy which only comes into play over and above Tyson's one-million-dollar self-insured retention. *Id.* at 3–4. Arch acknowledges its payment was one million dollars, and thus, according to Tyson, the Ace excess policy would not be reached. *Id.* Tyson contends Arch knew since 2009 that the Ace policy was an excess policy, and yet still erroneously pleads the Ace policy is primary to the Arch policy. *Id.* at 4.

Tyson additionally argues this matter is due to be stayed or dismissed under the abstention doctrine. First, Tyson argues because Arch's claims here mirror the insurance coverage issues already in litigation in the State Court Coverage Lawsuit, the *Wilton/Brillhart* doctrine supports abstention. *Id.* at 6–9. Tyson submits that many of the issues have already been decided by the Blount County court. *Id.* at 6–7. Tyson argues an analysis of the *Brillhart* factors weighs in favor of abstention. Alternatively, Tyson submits the case should be stayed pursuant to the *Colorado River* abstention doctrine. *Id.* at 9–10.

Tyson also claims the action is due to be dismissed for improper venue under 28 U.S.C. § 1391(b), arguing essentially all substantial acts or omissions giving rise to this coverage dispute occurred in the Northern District. (Doc. 11, ¶ 7). Alternatively, Tyson submits the case should be transferred to the Northern District for the convenience of the parties. The Underlying Incident occurred at Tyson's plant in Blount County which is in the Northern District, Arch's policy was issued to DSI in Blount County, plant

employees and management at the time were residents in the Northern District, and first responders, medical providers, and investigating officers were residents in the Northern District. *Id.*

Griffino and Walker filed motions to dismiss and raised the same arguments made by Tyson in its motion and brief. *See* (Docs. 20, 40). Griffino additionally challenges the court's personal jurisdiction over him, stating he is a resident of Arkansas, has never done business in this District, and there are insufficient minimum contacts to support personal jurisdiction over him in this forum. (Doc. 40, ¶ 3).

In response to Defendants' motions, Arch disputes that these issues have already been litigated and lost by Arch in state court. (Doc. 21 at 1–2). Specifically, Arch notes there has been no finding of coverage in the State Court Coverage Lawsuit, Ace is not a party to that action nor are any of the issues related to the Ace policy raised in that litigation, and the state court judge's declaratory order, which is now on appeal, addresses only issues related to the duty to defend. *Id.* at 1–3.

Regarding the applicability of the voluntary payment doctrine, Arch submits "voluntary payment" is an affirmative defense, and such matters not appearing on the face of the pleadings cannot form the basis of a motion to dismiss. *Id.* at 5–6. Regardless, Arch submits the payment was not voluntary here, where there was an understanding a suit for recovery would follow. *Id.* at 6–9.

In response to Tyson's arguments that the Ace policy is excess and the Arch's "Primary Insurance Endorsement" applies, Arch urges these are disputed factual issues which are improperly argued at the motion to dismiss stage. *Id.* at 9–14.

As for the abstention argument, Arch contends the *Colorado River* doctrine is inapplicable and Tyson fails to demonstrate "exceptional circumstances" to support abstention under *Colorado River*. *Id.* at 14–16. Arch next argues that because no parallel state action exists, the *Brillhart* abstention doctrine similarly fails. *Id.* at 17–20. In that regard, because Ace is not a party to that suit, Arch argues the state court will be unable to resolve all the issues raised in this action. *Id.* Even analyzing the *Ameritas* considerations, Arch contends the factors weigh in favor of this court retaining jurisdiction and denying the Defendants' motions to dismiss. *Id.* at 21–32.

In reply, Tyson notes the issues that remain pending in the State Court Coverage Lawsuit include Arch's bad faith failure to defend, Arch's duty to indemnify, Arch's bad faith failure to indemnify, DSI's separate duty to defend and indemnify under the MSSA, and damages. (Doc. 24). The coverage defenses raised by Arch are virtually identical in both the state and federal court actions and thus the actions are parallel despite Arch's arguments to the contrary. *Id.* at 3–6. Tyson factually distinguishes the cases relied upon by Arch arguing the state court actions either had no pending state court case or the pending action was the personal injury case in which coverage was not an issue. Here, there is a parallel coverage lawsuit that is pending and in which the insurance coverage issues have been litigated for several years.

B.      *Motion to Realign the Parties and to Dismiss for Lack of Diversity Jurisdiction (Doc. 27) and DSI's Motion to Dismiss/Motion for Judgment on the Pleadings (Doc. 38)*

Tyson argues this case should be dismissed for lack of jurisdiction because when the parties are properly aligned, diversity jurisdiction no longer exists. (Doc. 27). Specifically, Tyson contends the interests of Arch and its insured, DSI, are identical with regard to the primary issues in this suit, and for this reason DSI should be realigned as a co-plaintiff. (Doc. 27 at 1). DSI's realignment destroys complete diversity because DSI and Walker are Alabama residents. *Id.* at 2. Tyson argues under the "primary purpose" test, which is followed in this circuit, "[i]t is … the court's responsibility to properly align the parties and determine whether diversity jurisdiction exists." *Id.* at 3 (quoting *Fed. Ins. Co. v. Harbart Constr. Co.*, 82 F. Supp. 2d 1331, 1333 (S.D. Ala. 1999)).

DSI filed a memorandum in opposition to Tyson's motion to realign it as a co-plaintiff and requests that it be dismissed as a party or that the court grant judgment in its favor. (Doc. 38). DSI argues the primary purpose of the lawsuit is to resolve a coverage dispute between Arch and Tyson, not Arch, DSI, and Tyson. *Id.* at 2. DSI submits that its interests are not aligned with Arch because it has no interest in this case. *Id.* at 3. DSI was not a party to the Underlying Action and is not a necessary party here. *Id.* at 2–3. Accordingly, DSI requests dismissal because the complaint fails to state any claim against it. *Id.* at 4.

Arch also opposed Tyson's motion to realign, arguing Arch and DSI's interests are adverse because if this court determines there is no coverage to the Tyson Defendants under the Arch policy, then DSI will be forced to indemnify Tyson under the MSSA. (Doc. 39). Arch argues this demonstrates the interests of Tyson and DSI are actually aligned because both would favor a finding that the Arch policy provides coverage. *Id.* at 9. Arch disputes that the Eleventh Circuit follows the primary purpose test and further argues that in a Declaratory Judgment action, all persons who may have a claim or an interest in the action shall be made parties. *Id.* at 8–9.

## VI.   ANALYSIS

By its Complaint, Arch seeks a declaration that Ace had a duty to defend and indemnify the Tyson Defendants for the Underlying Action, Arch had no duty to indemnify the Tyson Defendants, and Arch is entitled to reimbursement of the one-million-dollar settlement paid on the Tyson Defendants' behalf. (Doc. 1). Defendants request this Court abstain, either through a stay or dismissal of the complaint, to allow the matter to be litigated in the pending parallel State Court Coverage Lawsuit. A court's declaration of the respective duties to defend and indemnify under the Ace and Arch policies will be determinative of the related claims of subrogation, indemnification, and unjust enrichment. Based on the court's analysis of this case under the *Wilton/Brillhart* and *Colorado River* abstention doctrines, the court finds abstention is appropriate and warranted in this case and recommends this matter be stayed.[6]

The Declaratory Judgment Act provides, with limited exceptions, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). Given the plain language of the Act, this Circuit has long recognized that a district court has discretion to "decline to entertain a declaratory

---

[6] The *Wilton* court noted "that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288, n.2.

judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven–Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982).

Noting that not all parties are present in the State Court Coverage Lawsuit, Arch argues abstention is improper because Ace is not a party to the litigation below.  This factor does not preclude abstention, however, because proceedings are considered "parallel" when they involve "substantially the same parties and substantially the same issues."  *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004).  The parties need not be identical.  Moreover, as discussed at the hearing, Arch would not be precluded from bringing Ace into the pending State Court Coverage Lawsuit.  And, as demonstrated by Arch's motion for leave to amend, the proper Ace entities have not yet been joined in this action in any event.[7]  Arch does not dispute it has named the incorrect Ace entity.  (Doc. 36).  Thus, Ace's absence from the state court litigation is inconsequential, particularly given that Ace is not properly named in this suit and the Ace entities can be brought into the pending State Court Coverage Lawsuit.

A.      *Wilton/Brillhart Abstention Doctrine*

The Supreme Court has made it clear that the discretionary standard set forth in *Brillhart v. Excess Insurance Company*, 316 U.S. 491, 494 (1942), governs a district court's decision to stay or dismiss a declaratory judgment action when there are parallel state court proceedings.  *Wilton*, 515 U.S. at 289–90.  "In fact, it appears that when parallel state proceedings are pending, there is virtually a presumption against the exercise of jurisdiction in the federal declaratory judgment action."  *Lincoln*, 2006 WL 3734331, *3.  The Eleventh Circuit has endorsed the "warning" of *Brillhart* which "should be heeded."  *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).  Under *Brillhart*, a district court "should ascertain whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court" keeping in mind the following:

---

[7]A review of the summons and return reveals that "ACE Insurance Agency, Inc.," through InCorp Services, Inc., was served with the lawsuit in this case.  *See* (Docs. 3, 5).  No pleading has been filed on behalf of the Ace entity served.  The service of process department for InCorp Services, Inc. sent a letter which states there is no entity by the name of "Ace Insurance Company" per the Alabama Secretary of State's public records.  *See* (Doc. 33).

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 494-95.

In *Ameritas*, the Eleventh Circuit emphasized that "federalism, efficiency, and comity" require district courts to balance federal and state interests in determining how to exercise their discretion to hear a declaratory judgment action when a parallel state action exists. *Ameritas*, 411 F.3d at 1330–31. The *Ameritas* court promulgated a non-exhaustive set of "guideposts" to be considered, including: (1) the state's interest in deciding the matter; (2) whether a judgment in the federal action would completely resolve the controversy; (3) whether the declaratory judgment action would clarify the parties' legal relations; (4) whether the federal action is a form of "procedural fencing" being utilized "to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable"; (5) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (6) whether a superior alternative remedy exists; (7) whether underlying facts are important to informed resolution of the matter and, if so, (8) whether the state court is better situated than the federal court to evaluate those facts; and (9) the nexus (if any) between the underlying issues and state law or policy, and whether federal common or statutory law requires resolution of the declaratory action. *Id*. at 1331 (adopting the factors enumerated in *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000), and *Centennial Life Ins. v. Poston*, 88 F.3d 255 (4th Cir. 1996)). *See also Progressive Specialty Ins. Co. v. Bailey*, No. 06-0289-WS-C, 2006 WL 2091749, at *3-*6 (S.D. Ala. July 25, 2006), and *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1238-44 (S.D. Ala. May 17, 2006) (declining to exercise jurisdiction over declaratory judgment actions filed by insurers after consideration of the *Ameritas* factors).

Considering the first guidepost, Alabama state court has a strong interest in the issues presented in the Complaint being decided in the pending State Court Coverage Lawsuit. The accident giving rise to the Underlying Action involves the wrongful death of an Alabama resident at Tyson's plant located in Blount

County, Alabama.  (Doc. 1-1).  The amended complaint in that action alleges Reba Kirkley, Mr. Hayes, Mildred Hayes, and Walker were residents of Alabama[8] and DSI was incorporated in Alabama.  *Id.*  Both the Underlying Action and the State Court Coverage Lawsuit were litigated in Alabama state court.  (Docs. 1-1, 1-4).  With regard to the Arch policy, it was issued and delivered in Dothan, Alabama, to DSI, an Alabama corporation.  The circuit court judge in the State Court Coverage Lawsuit entered a declaratory judgment in that case.  Issues remain pending in that case, and the declaratory judgment has been appealed to the Alabama Supreme Court. (Doc. 50 at 6–9).  The legal issues of equitable subrogation and indemnification, common law indemnity, and unjust enrichment raised by Arch's Complaint involve Alabama state law issues concerning construction, interpretation, and application of insurance policies, including applicability of coverage exceptions and priority of coverage.  This element supports abstention.

Second, *Ameritas* looks to "whether the judgment in the federal declaratory action would settle the controversy."  *Ameritas*, 411 F.3d at 1330–1331.  Because of the pending State Court Coverage Lawsuit and the related pending appeal to the Alabama Supreme Court of the declaratory judgment on the issue of the duty to defend entered in that case, a declaration here would not likely settle the entire controversy.  Additionally, the State Court Coverage Lawsuit is broader because it includes Tyson's bad faith claims against Arch and breach of contract claims against DSI.

The third *Ameritas* factor considers "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue." *Id.*  Again, because the matter has been litigated for a number of years in state court and the Blount County judge has already addressed at least Arch's duty to defend in its declaratory judgment, a declaration from this court may serve to confuse rather than clarify the issues.

Defendants argue the fourth guidepost favors abstention because Arch is using this lawsuit as "procedural fencing."  Indeed, even the Blount County court questioned Arch's motivation, cautioning

---

[8] The amended complaint in the Underlying Action alleges Griffino is also an Alabama resident (Doc. 1-1 at 8, ¶ 4), but Arch's complaint here alleges Griffino is a resident of Arkansas.  (Doc. 1, ¶ 12).

14

"[t]his Court will not condone or permit an attempt by any party to avoid this Court's duly-invoked jurisdiction, or its duly-entered orders, by initiating a duplicative action in another court." (Doc. 49-1 at 3). The court's order has been appealed to the Alabama Supreme court. (Doc. 50 at 6–9). That is the proper channel for Arch to challenge the state court judge's declaration, not through a collateral attack in federal court.

The fifth *Ameritas* consideration is "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." 411 F.3d at 1331. Litigating the coverage issues in federal court will potentially interfere with the "orderly and comprehensive" disposition of the pending State Court Coverage Lawsuit which arises from the same facts and has been litigated for multiple years. This factor points toward abstention given the obvious friction inherent in having near-identical litigation pending in both federal and state courts.

The sixth *Ameritas* factor directs courts to examine "whether there is an alternative remedy that is better or more effective." *Id.* The court agrees with Tyson that the Blount County court is in a better or more effective position to resolve these claims having presided over the wrongful death Underlying action that was litigated for nearly seven years in the same Alabama court and before the same judge presiding over the State Court Coverage Action which has been pending since 2014 and in which discovery has been taking place. Allowing the issues to be resolved in the State Court Coverage Lawsuit will conserve resources of the parties and the judicial system.

The seventh and eighth *Ameritas* guideposts direct courts to consider "whether the underlying factual issues are important to an informed resolution of the case" and, if so, "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Id.* While this court can competently analyze the issues under Alabama law, as discussed above, the underlying factual issues have been litigated before the Blount County court for years and thus that court has the benefit of that information from its consideration of the factual issues in the Underlying Action, as well as review and familiarity with

the Arch policy and legal issues related to it from the State Court Coverage Lawsuit.  These factors point

toward abstention.

The ninth and final *Ameritas* factor considers "whether there is a close nexus between the

underlying factual and legal issues and state law and/or public policy, or whether federal common or

statutory law dictates a resolution of the declaratory judgment action." Id. This guidepost weighs in favor

of abstention. Arch's Complaint raises exclusively state law issues and implicates exclusively state law

public policies, with no reference to federal common or statutory law.

Considered in their totality, the *Ameritas* factors clearly favor abstention.  *See Sherwin–Williams*

*Co. v. Holmes County*, 343 F.3d 383, 390–91 (5th Cir. 2003) ("if the federal declaratory judgment action

raises only issues of state law and a state case involving the same state law issues is pending, generally the

state court should decide the case and the federal court should exercise its discretion to dismiss the federal

suit"); *ITT Industries Inc. v. Pacific Empl. Ins. Co.*, 427 F. Supp. 2d 552, 553 (E.D. Pa. 2006) (describing

wasteful, inefficient outcome if both federal court and state court ruled on parallel actions, with duplication,

piecemeal resolution of issues, and encroachment on other proceedings).  One court observed that "[i]t

hardly" preserves "scarce judicial resources to allow separate suits stemming from the same overall

controversy and involving overlapping issues to proceed on parallel tracks." *Mitcheson v. Harris*, 955 F.2d

235, 239 (4th Cir. 1992).  Accordingly, upon consideration of the *Ameritas* factors as set forth above, the

Court concludes that the applicable considerations weigh in favor of abstention.

B.    *Colorado River Abstention Doctrine*

Even if the court analyzes the facts here under *Colorado River*, abstention is warranted.  In cases

involving purely non-declaratory judgment claims or declaratory judgment claims along with coercive

claims,[9] a federal court may elect to abstain from exercising jurisdiction when parallel and duplicative

---

[9] "A federal court does not have such broad discretion …when a plaintiff seeks coercive relief, such
as rescission, in addition to a declaration under the Declaratory Judgment Act." *Mega Life & Health Ins.
Co. v. Tordion*, 399 F. Supp. 2d 1366, 1369 (S.D. Fla. 2005) (citing *Occidental Life Ins. Co. v. Nichols*,
216 F.2d 839, 842 (5th Cir.1954) (district court erred in dismissing life insurer's suit to rescind and declare
policy void for insured's misrepresentations concerning his medical history where *inter alia* case "was not

16

litigation is pending in state court.  *See Colorado River,* 424 U.S. 800.  The State Court Coverage Lawsuit

is a parallel proceeding.

Under *Colorado River*, abstention is appropriate in narrow circumstances.  The Supreme Court

outlined three scenarios in which abstention is invoked: (1) "in cases presenting a federal constitutional

issue which might be mooted or presented in a different posture by a state court determination of pertinent

state law," (2) "where there have been presented difficult questions of state law bearing on policy

problems," or (3) "federal jurisdiction has been invoked for the purpose of restraining state criminal

proceedings."  *Colorado River*, 424 U.S. at 814–16.

Finding none of those factors applicable in that case, the Court went on to identify another scenario

in which abstention applies where "principles rest on consideration of 'wise judicial administration, giving

regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *Id.* at 817

(citations omitted).  The Court identified the following relevant factors: whether the courts assumed

jurisdiction over property, the relative inconvenience of the federal forum, the potential for piecemeal

litigation, and the order in which the parallel suits were filed.  *Id.* at 818–20; *see also Ambrosia*, 368 F.3d

at 1328.  The Court emphasized, "[n]o one factor is necessarily determinative; a carefully considered

judgment taking into account both the obligation to exercise jurisdiction and the combination of factors

counselling against that exercise is required."  *Colorado River*, 424 U.S. at 817–18.

---

merely for a declaratory judgment, but also for rescission")).  If a claim for declaratory relief includes a
claim for coercive relief that is determined to be frivolous, premature, "wanting in equity," or otherwise
ancillary, however, then the suit could be considered solely a declaratory action and the *Brillhart* holding
would clearly apply.  *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973).  The court
finds Arch's claims of subrogation, indemnity, and unjust enrichment to be ancillary such that this action
can be considered a declaratory judgment action, the result of which will determine the outcome of the
ancillary claims.  *See id.*; *see also Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1237 (S.D. Ala.
2006) ("If peripheral monetary claims could deprive district courts of the discretion granted them by the
Declaratory Judgment Act to hear or not to hear what are fundamentally declaratory judgment actions, then
such claims would render federal courts virtually powerless (save for the rare case in which *Colorado River*
abstention is warranted) to avert wasteful, duplicative declaratory litigation on exclusively state law issues
in federal court running alongside parallel state litigation on the same issues, with concomitant disruption
to the time-honored values of federalism, comity and efficiency.").

There is no property at issue here and thus the first factor does not apply, but the other factors weigh heavily in favor of abstention.  This forum is significantly less convenient because the majority of the witnesses, the accident site, and all substantial acts and omissions occurred in Blount County, Alabama, which is located in the Northern District of Alabama.  Parallel actions in state and federal courts could lead to piecemeal litigation, particularly given the state court judge's declaration regarding Arch's duty to defend, a decision that has been appealed to the Alabama Supreme Court.  Undertaking the same coverage analysis defeats judicial economy and could lead to inconsistent results.  Significantly, the State Court Coverage Lawsuit has been litigated for several years and has progressed much further than the instant case.  The parties in the state court action have engaged in extensive and costly discovery and motion practice and several threshold issues have already been decided.  Wise judicial administration and conservation of judicial resources counsel in favor of abstention.

## VII.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above, it is the **RECOMMENDATION** of the Magistrate Judge that this action be **stayed** to allow the parties to litigate the claims in the pending State Court Coverage Lawsuit.  It is further **RECOMMENDED** that the Clerk be directed to **administratively close** this case and the parties be directed to file a **status report every three months**.

On the pending motions, the Magistrate Judge makes the following **RECOMMENDATIONS**:

| DOC. # | MOTION | RECOMMENDED RULING |
|---|---|---|
| 11 | Tyson's Motion to Dismiss, or in the alternative, Motion to Stay | **Deny without prejudice** motion to dismiss; **Grant** motion to stay. |
| 20 | Ricky Walker's Motion to Dismiss, or in the alternative, Motion to Stay | **Deny without prejudice** motion to dismiss; **Grant** motion to stay. |
| 27 | Tyson's Motion to Realign the Parties and to Dismiss for Lack of Diversity Jurisdiction | **Deny without prejudice**. |
| 36 | Plaintiff's Motion for Leave to Amend Complaint | **Deny without prejudice**. |

| 38 | Dothan's Security's Motion to Dismiss or alternatively Motion for Judgment on the Pleadings[10] | **Deny without prejudice**. |
| 40 | Mike Griffino's Motion to Dismiss, or in the alternative, Motion to Stay | **Deny without prejudice** motion to dismiss; **Grant** motion to stay. |
| 42 | Tyson's Motion for Extension of Time to File Response | **Deny as moot**. |

It is **ORDERED** that the parties shall file any objections to these Recommendations on or before **June 21, 2017.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 7th day of June 2017.

_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[10] DSI's motion to dismiss, or alternatively, motion for judgment on the pleadings is contained in its response (Doc. 38) in opposition to Tyson Foods' motion to realign DSI as a co-plaintiff, and is not docketed as a motion.

19